Cummins v. The Des Moines & St. Louis R'y Co.

AFFIRMED.

---

## CUMMINS v. THE DES MOINES & ST. LOUIS R'Y CO.

1. **Railroads: RIGHT OF WAY DAMAGES: THE WHOLE PROPERTY TO BE CONSIDERED: DUTY OF COMMISSIONERS.** Where two lots contiguous to each other are improved together as one property, and it is sought to appropriate one of them for right of way purposes, the owner of the lots is entitled to compensation for the injury to the property as a whole, and not only for the lot actually appropriated; and in such case, although the notice of condemnation named the one lot only, it was competent for the commissioners, under section 1249 of the Code, to find that the two lots constituted but one property, and to assess the damages accordingly.

2. ———: **CONDEMNATION OF RIGHT OF WAY: APPEAL BY LAND OWNER: HIS TITLE PRESUMED.** Where two contiguous lots constituted but one property, and it was sought to appropriate one of them only for right of way purposes, but the commissioners assessed the damages to the whole property, and the person to whom the notice of condemnation was given as the owner thereof appealed, but the railway company did not appeal, nor in any other way raise an issue as to the ownership of the other lot, *held* that, from the facts thus appearing of record, the legal presumption arose that the appellant was the owner of both lots, and it was not necessary for him to prove his title upon the trial of his appeal.

3. ———: ———: **MEASURE OF DAMAGES: EXCAVATION.** Where a portion of a tract of land is sought to be appropriated for right of way

purposes for a railroad, the owner of the tract is entitled to compensation for all damages which will result to the portion of the premises not appropriated, from the proper construction and use of the railroad; and such compensation should be made in the condemnation proceedings. It is accordingly *held* that the commissioners should take into consideration the fact that the proper construction of the road would require a cut to be made through the premises, and should assess the damages accordingly.

4. ——: ——: ——: PROXIMITY OF DEPOT. And upon an appeal by the property owner in such a case, evidence that the company's freight depot was located on the block east of the premises in question, and that it had constructed a number of tracks over that portion of the premises taken for right of way, was admissible only to show the extent to which the company would probably use the ground taken in properly carrying on its business, and not to show how much the appellant was damaged by reason of the number of tracks and the proximity of the depot to his premises; because for such damages the law affords him no relief. ·

5. ——: ——: ——: PRESUMPTION THAT ALL LAND TAKEN WILL BE USED. Where two lots constitute but one property, and it is sought to appropriate the whole of one of the lots to right of way purposes for a railroad, the company cannot have the damages assessed on the theory that it will use only a part of it; and where a building erected on the other lot extends a few feet over the lot appropriated, it is proper, in assessing the damages, to consider the cost to the owner of removing such portion of the building, and putting the building, after such removal, in proper condition for use and occupancy.

6. ——: ——: ——: EVIDENCE AS TO SELLING PRICE OF NEIGHBORING LOTS. In estimating the damages which the owner of city lots should recover on account of the appropriation of one of them for railway purposes, evidence of the price at which other lots, not shown to be similar to the ones in question, were sold about the time the condemnation proceedings were begun, was not admissible for the purpose of establishing a criterion by which the jury might form a judgment as to the value of the lots under consideration. *Winklemans v. Des M. N. W. R'y Co.*, 62 Iowa, 11, distinguished.

7. ——: ——: ——: RETENTION OF FEE BY LAND-OWNER. While a railway company, by condemnation of right of way, obtains only an easement in the land appropriated, and the fee remains in the original owner, yet, since the appropriation is made on the theory that the easement will be perpetual, and there was no evidence in this case of the existence, either on the surface of the land or beneath it, of any mineral or other material, which the owner could lawfully remove under the right which the law reserves to him, his measure of damages was not different from what it would have been had the proceedings divested him of all interest in the land; and it was not prejudicial error for the court to refuse to instruct the jury that the owner was not divested of the fee.

8. **Practice**: SPECIAL INTERROGATORIES TO JURY PROPERLY REFUSED.
A number of special interrogatories which defendant asked the court to
propound to the jury were properly refused, because some of them were
based upon erroneous theories as to points of law herein-before discussed;
another called for a finding not upon an ultimate question of fact; and
the answer to another, however given, could have shed no light upon
the correctness of the general verdict.

*Appeal from Warren Circuit Court.*

THURSDAY, APRIL 24.

THESE proceedings were instituted by defendant for the
condemnation of certain lands belonging to plaintiff for right
of way purposes for its railway. The jury appointed by the
sheriff assessed the damages, and from their award plaintiff
appealed to the circuit court. There was a trial to a jury in
the circuit court, who assessed the damages at $9,042.45, and
the usual order was entered by the court. Defendant appeals.

*Parsons & Runnells*, for appellant.

*Wright, Cummins & Wright*, for appellee.

REED, J.—I. The property in question is lots 1 and 2, in
block 4, in the city of Des Moines. The block is bounded
on the north by Cherry, and on the west by Seventh
street, and the lots in question constitute the
north-west quarter of the block. They are each
sixty-six feet in width, and they front west on
Seventh street, and extend back, parallel with
Cherry street, to an alley which runs north and south through
the middle of the block. Lot 2 is the southerly of the two
lots, and it is bounded on the south by an alley running
east and west through the block.

On the west end of lot 1 there is a two-story frame tene-
ment house, which fronts to the north on Cherry street. It
is sixty-six feet in length, and extends back to within less
than three feet of the dividing line between the two lots. To
the east of this there is a two story brick residence, which

also fronts north. About four feet of the rear or south end of this building is on lot 2. The wells and cisterns, and all out buildings appurtenant to the property, were situated to the rear of the main buildings, and were all on lot 2; so that, while the lots, as laid out originally, fronted west on Seventh street, as improved, the property fronts to the north on Cherry street.

Defendant, when it caused the proceedings to be instituted, gave notice of its purpose to appropriate lot 2, but when the commissioners appointed by the sheriff to assess the damages inspected the property, they treated the two lots as constituting a single property, and assessed the damages on that theory.

On the trial in the circuit court, defendant objected to any evidence as to the effect of the appropriation of lot 2 on the value of lot 1, or the improvements thereon, on the ground that the proceedings which it had instituted were for the condemnation of lot 2 only, and plaintiff had not by his notice of appeal, or any pleading filed in the case, alleged his ownership of lot 1, or claimed damages to that lot on account of the location and construction of the railway. It also asked that an instruction embodying the same views be given to the jury. It also asked the court to charge the jury that, "in order to recover for damages to lot 1, in consequence of the construction or location by defendant of its railway across lot 2, it is necessary for plaintiff to show that he had, at the date of defendant's appropriation, title to that lot, or some interest in it, and, if the latter, the character and extent of his interest."

The court overruled the objections, and refused to give these instructions, and permitted plaintiff to prove the damages, on the theory that the two lots as improved constituted one property. It was also ruled by the circuit court that it was not necessary for plaintiff to prove that he had title to either of the lots. We think these rulings are correct. The evidence left no doubt that the two lots were improved and

used as one property, and the rule in such cases is that the property owner is entitled to compensation for the injury to the property as a whole. *Hartshorn v. B., C. R. & N. R. Co.*, 52 Iowa, 613.

When defendant instituted the proceedings to condemn lot 2, and made plaintiff a party thereto, it conceded his title to

2. ——: condemnation of right of way: appeal by land-owner: his title presumed.

that lot. The action of the commissioners, in including both lots in their assessment and return, is authorized by section 1249 of the Code. That section provides that "all the lands appearing of record to belong to one person and lying in one tract may be included in one appraisement and return, unless the agent or attorney of the corporation, or the commissioners, have personal knowledge that the tract does not belong wholly to the person in whose name it appears of record." The commissioners found that the two lots constituted one tract, and they included them both in their assessment and return; and the presumption from these facts is that they found that plaintiff appeared by the records to be the owner of both lots. The case came into the circuit court on plaintiff's appeal from the assessment of damages. Defendant made no question as to the correctness of the finding of the commissioners as to the ownership of the property, either before the commissioners or by appealing from their finding, or by any pleading or paper filed in the case subsequent to the appeal. The case, then, presented no issue as to the ownership of the property. The legal presumption from the facts appearing in the record is that plaintiff is the owner of both lots.

II. Plaintiff was permitted, against defendant's objection, to prove on the trial that the track or road-bed of defendant's

3. ——: ——: measure of damages: excavation.

railway, as constructed through the premises, is in a cut about four feet deep. The objection urged against the evidence introduced to establish this fact is, that "the land-owner's compensation is not to be measured by the manner in which the road is actually constructed, but is to be found as of the date of location, and

with reference to things as they then existed." It is doubtless true that, for any damages which the land-owner may sustain by reason of the negligence of the railroad company as to the manner of constructing its road, he has his remedy by an ordinary action, and such damages cannot be considered, or compensation therefor be made, in the proceedings to condemn the right of way. *King v. The Iowa Midland R. Co.*, 34 Iowa, 458. But he is entitled to compensation for any damages which will result to the portion of the premises not appropriated from the proper construction and use of the railway; and such compensation should be made in the condemnation proceedings. *Gear v. The C., C. & D. R. Co.*, 39 Iowa, 23. It is not claimed in the present case that defendant was guilty of any negligence in constructing the cut through the premises, but the necessity for constructing the road-bed on a level below the natural surface was created by the condition of the ground. Whether in any case the road-bed, when properly constructed, will be on the level of the natural surface of the ground, or above or below that level, depends upon considerations of engineering. These considerations rendered the construction of the cut necessary, and, as the value of the remainder of the premises might be very materially affected by it, it was properly submitted to the jury, to be considered by them in determining the damages.

III. Plaintiff was also permitted to prove that defendant's freight depot was located on the block next east of the premises in question; also, that it had constructed a number of tracks on the portion of the premises taken for right of way. Defendant assigns the admission of the evidence to prove these facts as error. It is matter of common observation that the value of residence property is injuriously affected by the construction and operation of a railroad, or the establishment of a railroad depot, near it. But, unless some portion of his property is appropriated to the use of the railroad, the property owner is without remedy, however much his property may be depreciated

4. ——: ——: prox-
imity of de-
pot.

in value by the construction and operation of the road, or the establishment of the depot. For such injuries and inconvenience as he suffers therefrom in common with the general public, the law affords him no remedy.

Plaintiff, then, was not entitled to prove the proximity of the depot, or the number of tracks, as independent elements of his damages. But in determining the value of the property remaining after the appropriation, it was proper for the jury to consider the use to which the portion taken was to be appropriated, and the extent to which it would probably be used for the purpose intended. The right which defendant acquires by the appropriation is, to use the ground taken to any extent which the exigencies of its business may demand; and the value of the unappropriated portion of the premises may be affected very materially by the extent to which this right will be used. The evidence in question was admitted for the purpose of showing the extent to which defendant would probably use the ground taken in carrying on its business, and for this purpose we think it was admissible.

IV. Plaintiff asked a witness how much it would cost to reconstruct the rear end of the brick building, after it was taken off by the right of way, and put the property in condition for residence purposes. Defendant objected to the question on the ground "that it called for the opinion of the witness upon a state of facts that does not appear under any circumstances to become necessary for the proper use of the property."

The evidence showed that, as the road is constructed through the premises, it is about six feet from the south end of the brick house to the edge of the cut. Defendant also asked the court to give the following instruction to the jury:

"If you find from the evidence that the defendant has located and constructed its railway across lot 2, being the southerly of the two lots in question, and is now operating the same as so constructed, without the intention to remove, or in any way interfere with the plaintiff's free and unre-

stricted use of the brick building spoken of by the witnesses, and that it will not be necessary at any future time for it, in the repair, construction or convenient use of its railway, to tear down, remove, or in any way interfere with the use of said building by the plaintiff or his tenants or vendees, you will not allow any sum as damages simply upon the idea of the removal of said building, or of its being hereafter torn down by the defendant."

The court overruled the objection to the question. It also refused to give the instruction. This action of the court we think was right. The answer to appellant's position is, that it is seeking by this proceeding to appropriate the whole of lot 2, and, by virtue of the proceedings, when they are completed, it will acquire the right to use and occupy the whole of the lot. If it did not require the whole of the lot for the use of the road, it might have taken less than the whole of it. The law gave it the election to take the whole, or but part, and it elected to take the whole; and, in view of the rights which it acquires to occupy and use the whole of the lot, it can not have the damages assessed on the theory that it will in fact use but a part of it.

V. Appellant sought to prove the price at which other lots in the vicinity of the premises in question had been sold at about the time the condemnation proceedings were begun. All the evidence offered for this purpose was excluded on plaintiff's objection. The ruling was correct. It was not shown, nor proposed to be shown, that there was any similarity between the lots in question and those which it was claimed had been sold; and the ruling of the court in excluding the evidence is in accord with the rule as laid down in *King v. The Iowa Midland R. Co.*, 34 Iowa, 458. Appellant claims, however, that a different rule was applied in *Winklemans v. Des Moines N. W. R. Co.*, 62 Iowa, 11. The evidence of the sales of other lands than that in question was not admitted in that case, however, for the purpose of establishing the value

*6. ——: ——: ——: evidence as to selling price of neighboring land.*

of the land in question; but the attention of witnesses was called to such sales, and they were asked about them, for the purpose of showing that they were acquainted with the values of lands in that neighborhood; and it was held that the evidence was competent for that purpose. But in this case the evidence of the sales of other property was offered for the purpose of establishing a criterion by which the jury might form a judgment of the value of the lots in question.

VI. Defendant asked the court to give the following instruction to the jury: "As to the right which the defendant acquires by its proceedings, and the payment of the sum awarded, you are instructed that the fee of the land remains, even after such proceedings and appropriation by the defendant, in the plaintiff; that the right which the defendant acquires is the right of location, construction and convenient use of its railway, and to take, remove and use, for the construction and repair of said road and its appurtenances, any earth, gravel, stone, timber or other materials on or from the land so taken, as may be necessary for any of these purposes."

7. ——: ——: ——: retention of fee by land-owner.

That the instruction, as an abstract proposition, is correct, is not doubted. The court in its instructions told the jury that defendant by the appropriation acquired substantially the rights enumerated in the instruction asked, but did not tell them that the fee of the land remained in plaintiff. Appellant assigns the omission as error. We do not regard the fact that plaintiff is not divested of the fee by the appropriation as of any practical importance in the case. The interest acquired by defendant by the appropriation is the right to occupy and use the surface of the land perpetually for the purpose for which it is taken. It is true that the land would revert to plaintiff, or his grantee, in case it should cease to be used for the purpose for which it is taken, but the appropriation is made on the theory that this will never occur; and there is no evidence of the existence, either on the surface or beneath it, of any materials, such as surplus earth, stone, coal

or mineral, which might be removed by plaintiff under the right reserved to him by law in the premises. So that the measure of his damages is not different from what it would be if the proceedings divested him of all interest in the land.

VII. Defendant asks that the jury be directed to find specially upon the following questions:

8. PRACTICE: special interrogatories to jury properly refused.

1. What was the fair market value, in cash, of lot No. 2, at the time of its appropriation by the defendant?

2. What was the fair market value, in cash, of plaintiff's entire premises immediately before the defendant's right of way was located across lot No. 2?

3. What sum do you allow as damages over and above the value of the property actually taken?

4. Do you find that the defendant has already located and constructed its road, and that it is now operating the same?

5. If you answer the last question in the affirmative, you will then answer whether its road, as constructed and operated, touches the brick building upon the premises, or whether any portion of the same was torn down or removed in the construction of the road?

6. Do you find that the defendant intends at any time to change the location or construction of its road, so as to make it necessary to tear down or remove any portion of the brick building?

7. Do you find that for the necessary or convenient use of defendant's road it would be necessary to tear down or remove any portion of the brick building?

The court refused to so direct the jury. We think this ruling was correct. The fourth, fifth, sixth and seventh questions were asked on the theory that defendant had the right to show that, notwithstanding it sought to condemn the whole of lot 2, its purpose was to make an actual appropriation of but a portion of it. As we have already seen, by the condemnation proceedings it acquires the right to use the whole of the lot, and it cannot be heard to say, while prosecuting

these proceedings to obtain this right, that it does not intend to avail itself of it. The questions were therefore immaterial.

As, owing to the manner in which the improvements were made, the two lots constitute a single property, defendant was not entitled to have the damages assessed with reference to the value of lot 2 as a separate property; and for this reason the first question was immaterial. The third was properly refused, for the reason that it does not call for a finding upon an ultimate question of fact; and an answer to the second would have given no aid in determining the correctness of the general verdict. Other matters were discussed by counsel, but we think we have disposed of all questions fairly presented by the record. The judgment of the circuit court is

AFFIRMED.