JAMES ELBERT WILES, APPELLEE, V. DEPARTMENT OF PUBLIC WORKS, APPELLANT.

FILED FEBRUARY 11, 1931. No. 27548.

C. A. Sorensen, Attorney General, and L. Ross Newkirk, for appellant.

A. L. Tidd, contra.

. Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY, DAY and PAINE, JJ.

PAINE, J.

This is an appeal brought by the department of public works of the state of Nebraska, the defendant and appellant in this case, from a judgment of the district court for Cass county entered in favor of the plaintiff and appellee, James Elbert Wiles. Prior to paving a portion of federal highway No. 75, which is also called King of Trails highway, it was required by the government rules for road construction that, as a condition to the United States paying a portion of the cost of paving the road, two slightly rounded turns at the corners of the farm, the first of which turns is just two miles directly south of Plattsmouth, must be eliminated. Proceedings were had by the state of Nebraska, acting through its department of public works, to condemn a right of way through this farm, and Frank P. Sheldon, Orin A. Davis and C. R. Troop were appointed appraisers by the county judge and awarded $8,000 damages to the appellee. From this award appellant appealed to the district court for Cass county;

the appellee filed a petition asking $20,000 damages; and the jury returned a verdict in favor of the appellee for $9,000.

The only issue presented in this case is a question of fact as to the amount of damages suffered by the appellee by reason of the appropriation of this strip of ground across the southeast corner of his farm for a highway. The facts brought out at the trial show that the Wiles farm is approximately a square tract of land, nearly three-fourths of a mile on each side, from which the highway cuts off a tract of about 43 acres. This highway, where it crosses the farm, parallels in a general way for about three-fourths of its length a drainage ditch, which has for nearly 17 years run across the farm between the present location of the highway and the corner. The tract of land outside of the drainage ditch in the corner consists of 29.5 acres, having located thereon a tenant house, garage, sheds, and a good well. The tract of land lying between highway No. 75 and the drainage ditch, consisting of 12.1 acres, is the only acreage that could have been farmed jointly with the rest of the farm if the highway had not been constructed through the farm. The ditch is in places 9½ feet deep and from 13 to 36 feet in width, the area of the land in the ditch being 1.4 acres, and the area of the federal highway is a trifle over 5 acres, making a total of only 48 acres of land directly affected by the new road. The main improvements upon this farm are located about one-half mile north of the highway, and the drive from the buildings connects to the public road north of the farm, directly away from federal highway No. 75 across the farm. These facts are clearly set out in a large map drawn by the highway department and which was the only exhibit introduced in evidence, and a small reproduction of which accompanies this decision.

Exhibit 1.

The appellee testified that this was the main highway connecting Omaha and Kansas City, and that a car passed on this highway on an average of every four minutes, and that he had purchased the 120 acres of land, which includes the 48 acres cut off by the highway, only two years before the time of trial; that the remainder of the farm he had owned for 17 years. The appellee supported his case by the evidence of seven men, as follows: T. H. Pollock, banker and stock raiser, owned seven farms within five miles, and testified that the Wiles farm is one of

the best in the state of Nebraska; that the value of the 385-acre tract was $250 an acre prior to the road going across it, and was worth $200 an acre after the road went across it. B. W. Livingston, who lived across the road east of the Wiles farm all of his life, testified that the value of the entire farm was decreased $40 to $50 an acre. He testified this was because of the perpetual damage during the lifetime of Mr. Wiles and his children's lifetime, and that he considered a paved highway much more damage to a farm than a railroad going across it. W. D. Wheeler, a former county official, who owned a 476-acre farm within four miles of the Wiles farm, testified that the highway going across this farm would make a difference in its value of $35 to $40 an acre. Frank P. Sheldon, who had been one of the appraisers, testified that he owned 1,000 acres of similar land, and that the value of the Wiles farm would be $225 to $250 an acre before the highway crossed it, and "I would say $40 or $50 an acre damage," and three other men living in the vicinity testified to practically the same facts—that the entire Wiles farm was worth from $30 to $50 an acre less after the highway crossed it.

The first of the expert witnesses called by the highway department was H. N. Thomas, federal loan examiner for the Lincoln Joint Stock Land Bank, who has during the past few years appraised such farm lands for loans of more than $2,000,000. The next witness, Vincent W. Straube, who owns over 2,000 acres of land in Cass and Otoe counties, has been appraising lands for the Nebraska Guaranty Fund Commission for 11 years, and had also appraised in bankruptcy proceedings and railroad tax cases. These well-qualified experts placed the value of the five acres of land taken by federal highway No. 75 at $1,011.68, a loss on the 12.1-acre strip between the road and the ditch at $1,200; the cost of the fences on both sides of the highway, $500; for permanent maintenance of the fence, $500; and each testified that the loss on the 340-acre tract, being the main body of the farm, and of

the 29.5-acre tract outside of the ditch was nothing; making the total damages $3,211.68. James M. Teegarden, of Weeping Water, acquainted with farm values in Cass county for 27 years, agreed in the main with the other appraisers after making three inspections, but allowed a diminution in value of $30 an acre for the land outside of the ditch, making the total damages in his opinion amount to $3,796.68. He was positive the loss of market value on the 340 acres north of highway No. 75 was nothing. Mr. H. N. Thomas testified that because of the ditch crossing the farm it had always been handled as two separate units.

How is it possible to reconcile such conflicting testimony? The testimony of the seven witnesses for the appellee followed the rule established in many cases in Nebraska. In *Beckman v. Lincoln & N. W. R. Co.*, 85 Neb. 228, Chief Justice Reese said: "From the adoption of our present Constitution in 1875 to the present time the uniform holding of this court has been that, in the exercise of the right of eminent domain by the condemnation of real estate for purposes of right of way, the landowner was entitled to the value of the land actually taken and the diminution in value of the land not taken as his damages." See *Omaha S. R. Co. v. Todd*, 39 Neb. 818; *Chicago, R. I. & P. R. Co. v. Buel*, 56 Neb. 205; *Fremont, E. & M. V. R. Co. v. Bates*, 40 Neb. 381; *Atchison & N. R. Co. v. Boerner*, 45 Neb. 453. Some of the early Nebraska cases are *Wagner v. Gage County*, 3 Neb. 237; *Chicago, K. & N. R. Co. v. Wiebe*, 25 Neb. 545; *Lowe v. City of Omaha*, 33 Neb. 587; *City of Omaha v. Howell Lumber Co.*, 30 Neb. 633, as cited in 2 Lewis, Eminent Domain, 1179.

And, in addition, if the owner has suffered any special damages, these must be considered. *Lowell v. Buffalo County*, 119 Neb. 776.

This court is mindful of the fact, called to its attention by appellee, that verdicts, though large, if within the estimate of some of the witnesses, should not be reversed

without just cause. *Kayser v. Chicago, B. & Q. R. Co.*, 88 Neb. 343; *Atchison & N. R. Co. v. Washburn,* 5 Neb. 117. Also, that no judgment should be reversed by reason of errors which do not affect the substantial rights of the adverse party. Comp. St. 1922, sec. 8657, Comp. St. 1929, sec. 20-853, and the many cases cited thereunder.

However, in the brief of the attorney general on behalf of the department of public works we find this language: "The department of public works for the state of Nebraska is charged with the privilege and responsibility of carrying out the great program of building a fine system of highways to meet the enormous demands of efficient and up-to-date transportation in this state. The department's duty, desire and intention is to build these roads at a cost that is fair and reasonable both from the standpoint of the people of this state and of the individual property owners particularly affected by these highways. The department would, therefore, be wholly remiss in fulfilling its duties and responsibilities if it did not oppose, with every lawful means at its command, every attempt on the part of any individual or group of individuals to cripple the carrying out of this public program by the imposition of unbearable financial burdens. The verdict of the jury in this case is more than an excessive and unconscionable decision as between individuals. It strikes at the vitals of a public convenience and necessity. Highway construction in this state would be almost paralyzed, in fact, utterly impossible from a financial standpoint, if the standards of compensation here sought to be imposed were allowed to prevail."

Is this court bound in every case by the rule laid down by Chief Justice Reese and cited above?

If a paved highway should cut off 40 acres across the corner of an entire section, is each of the 640 acres to be considered as diminished in value? If so, and this Wiles farm had included a section of land, this court would be faced in such a case with a verdict of $30,000 or more because of diminished value of the entire section. There

must be a limit to the size of the tract included. With this in view, we will examine the Nebraska cases.

1. 2. In *Beckman v. Lincoln & N. W. R. Co., supra,* Chief Justice Reese said that a Lancaster county farm of 148 acres was cut by a railroad, leaving 12 acres outside the right of way.

The decision in *Chicago, R. I. & P. R. Co. v. Buel, supra,* does not give the size of the tract of land, but an examination of the petition in the office of the clerk of this court shows it to have been for right of way across two 50-acre tracts in Lancaster county.

In the *Bates* case, *supra,* Judge Harrison states that the railroad goes through the southeast quarter of section 20, township 16, range 12, in Douglas county.

In the *Boerner* case, *supra,* Commissioner Irvine does not give the size of the tract. But in the first appearance of this case before this court, *Atchison & N. R. Co. v. Boerner,* 34 Neb. 240, it is shown to be four lots in the town of Rulo, and here Judge Norval reviews cases involving 120 acres of land (*Wilmes v. Minneapolis & N. W. R. Co.,* 29 Minn. 242) ; another 30 acres (*Sheldon v. Minneapolis & St. L. R. Co.,* 29 Minn. 318) ; and of two city lots (*Cummins v. Des Moines & St. L. R. Co.,* 63 Ia., 397).

In *Northeastern N. R. Co. v. Frazier,* 25 Neb. 42, Judge Maxwell shows that 120 acres was crossed by the railroad line, and, states: "In other words, just compensation for real estate taken or damaged entitles the owner of several descriptions used as one farm * * * to compensation for injury to the whole, although the right of way extends across but one or two of the subdivisions."

In *Scace v. Wayne County,* 72 Neb. 162, Judge Letton states that the tract was 313 acres, adjoining the city of Wayne, and was an irregular tract, from which one-half mile of road established cut off some 80 acres and deprived the owner of the use of well, windmill and tank. The trial court erroneously limited the jury to determin-

ing only the value of the land taken for the road and the cost of fencing, and the case was reversed.

In no one of the Nebraska cases reviewed is the size of the tract as large as in the case at bar, i. e., 385 acres.

In the interesting case of *United States v. Honolulu Plantation Co.*, 122 Fed. 581, where the government condemned 561.2 acres out of a plantation of 8,000 acres upon which to establish the naval station at Pearl Harbor, the court held that evidence respecting the value and extent of improvements upon the remaining portion of the tract was inadmissible, and cites from the opinion of Judge Bronson in *In re Furman Street*, 17 Wend. (N. Y.) 649, 669, as follows:

"However much the necessity for disarranging the plans of any individual may be regretted, the great principle upon which public improvements are to be effected must be substantially the same in all cases. All classes and conditions of men hold their property subject to the paramount claims of the state; and when it is taken for public purposes, and the question of compensation is presented, the only proper inquiry is, what is its value? The question is not, what estimate does the owner place upon it, but what is its real worth, in the judgment of honest, competent, and disinterested men? * * * What price will it bring in the market? That is the proper inquiry in a proceeding of this kind. As between individuals, the owner may demand any price, however exorbitant, for his property; but when it is taken for public purposes he can only demand its real value."

The compensation for land taken by right of eminent domain is measured by its market value at the time taken, and no evidence is admissible of its peculiar value for special reasons to its owner. The owner is not entitled to damages to the remainder of a large tract of land not taken when the damages to such land are of the same character as those suffered by all owners of land in that vicinity.

3. The third contention of the attorney general is that where the "verdict is so grossly disproportionate to any reasonable limit of compensation warranted by the facts that it shocks the sense of justice and raises at once a strong presumption that it is based on prejudice or passion, rather than on sober judgment, the appellate court should not hesitate to set it aside or direct a remittitur, even though the trial court has refused to do so." 2 R. C. L. 199, sec. 170. See *Kurpgeweit v. Kirby,* 88 Neb. 72; *In re Estate of O'Connor,* 105 Neb. 88; *Trute v. Holden,* 118 Neb. 449; *Garfield v. Hodges & Baldwin,* 90 Neb. 122; *Tyler v. Hoover,* 92 Neb. 221; *Burge v. Adams Co.,* 98 Neb. 4.

Does the verdict in this case warrant the charge made?

An examination of the map introduced in this case discloses that this large farm of 385 acres is three-quarters of a mile on each side, and has been divided into two tracts by the irregular drainage ditch, which permanently cuts the farm in two parts. It is evident that the engineers intentionally ran the federal highway No. 75 parallel therewith to decrease the damages as far as possible. In the southeast corner we find the house, garage and well for the tenant or hired man, while the appellee's extensive farm buildings are in the north central part of the farm with a driveway running north to the public road, not to the paved federal highway. The chickens and live stock kept at these buildings are far distant from dangers from passing automobiles. Should the 43-acre tract cut off by the road be farmed to corn or small grain, the teams or tractor will have to cross the highway but a comparatively few times during the year. Credible evidence appears in the bill of exceptions that 340 acres of this farm is not damaged in any way by the highway. A fair analysis of this evidence does not support the appellee's contention that this fine paved highway is of no value whatever to the owner of this land, and is of greater damage to him than a railroad line would be with its danger from fire and other things.

In *Sternberger v. Sanitary District*, 100 Neb. 449, Judge Barnes in a similar case rejected the testimony to the effect that an entire tract of 310 acres was all damaged by a ditch being constructed across a tract of land, and said: "This testimony, as a whole, was entitled to little consideration. The record shows that the plaintiff's witnesses gave their evidence with such perfect agreement that it should be carefully scrutinized by the court, and was not entitled to adoption as the true measure of damages." The court in that case reduced a judgment for $1,585.15 to $500.

It should be noted that this action was initiated as a condemnation proceeding to appropriate land for the use of the state of Nebraska for a federal highway. No question of jurisdiction has been raised at any stage of the proceedings. We wish it understood that we are not deciding here whether or not the department of public works of the state of Nebraska, without specific authority from the legislature, may ordinarily sue or be sued by or in its own name as such department.

Without further discussion, we find that the evidence fails to sustain the damages of $9,000 returned by the jury, and this court finds that under the facts in this case the judgment should be reversed, and this will be done unless the plaintiff shall within 30 days remit the sum of $3,000, leaving a judgment for $6,000. The costs will be taxed to the appellee.

AFFIRMED ON CONDITION.