PHILIP SCHAFER, APPELLEE, v. MISSOURI VALLEY PIPE LINE COMPANY, APPELLANT.

FILED JULY 29, 1932. No. 28251.

*George A. Lee, W. A. Robertson, Fred C. Foster* and *P. W. Morton,* for appellant.

*D. O. Dwyer* and *W. L. Dwyer, contra.*

Heard before GOSS, C. J., ROSE, DEAN, EBERLY and PAINE, JJ., and BLACKLEDGE, District Judge.

PAINE, J.

This is an action for damages caused by the construction of a pipe line across the plaintiff's farm and across a piece of rented land cropped by the plaintiff. The plaintiff asks for damages in the sum of $4,900, and the jury returned a verdict in his favor for $2,556.45. The defendant in the lower court appeals the action to this court.

The appellee, called the plaintiff hereafter, alleges that in July of 1930 the defendant company trespassed upon his land and laid a pipe line through, over and across said land, and that such pipe line is a continuing trespass upon his lands, and the plaintiff's title, by reason of said pipe line, has been incumbered so that its value is depreciated in the sum of $1,800, and that, by tearing down fences, destroying growing crops and pasturage, by use of heavy trucks and trampling over and upon a strip of land about 65 feet wide and about 91 rods long, 40 rods being through a pasture, the surface of said land and the crops thereon have been destroyed, to plaintiff's additional damage in the amount of $1,000. That one of the defendant's employees drove a truck through a gate, letting plaintiff's cows into a field of oats, and as a result one died, one was ruined and sold for $25, and a third recovered; and that these were purebred Holstein cows, and his total damage to the cows was in the sum of $500.

It is also charged by the plaintiff that there was a spring in his pasture, and that in running the pipe line through said pasture it interfered with said spring so that the spring has ceased to flow, and that plaintiff has been damaged by reason of the destruction of said spring in the sum of $1,500. That in constructing the pipe line over adjoining land rented by the plaintiff, the three-fifths interest of the plaintiff's corn, growing on a strip of land 65 feet in width and 80 rods in length, was destroyed, to his damage in the sum of $100, making a total damage in the sum of $4,900. The defendant filed a general denial.

The principal attack made upon the verdict of the jury by the appellant is based on the fact that the verdict is contrary to the evidence and is not sustained by sufficient evidence. There was introduced in evidence a written grant for a right of way and easement to construct, maintain and operate said pipe line, given by plaintiff to defendant for a consideration of 25 cents per rod, and a voucher for $20 for 80 rods was given to plaintiff in settlement upon July 9, 1930, by the right of way claim agent, which was

cashed by the plaintiff, and no objection was made by plaintiff during the construction of the pipe line across his land.

A large amount of evidence was taken in regard to the destruction of a spring, for which loss $1,500 was claimed as damages. Plaintiff testified on direct examination that he had a small spring in his pasture, about 40 feet south of his north line, and that the flow from the spring was about one inch in diameter, and that, in constructing the pipe line about 40 feet back of the outlet of the spring, they must have cut through it, for since that time the spring has not flowed. This evidence was supported only by the testimony of his brother, who testified to the existence of a spring before the pipe line was put through, and that it had not run since. Three old neighbors, called as witnesses by plaintiff to testify to other damages, knew nothing of any spring in this pasture. The first was H. F. Engelkemeier, who said that he had once farmed this same land for a couple of years. He knew there was some water down there in the pasture, but knew nothing of any spring when he farmed it. Parr Young, the next witness, who owned a farm within three miles of this place, never knew of the existence of a spring in this pasture. Otto Puls, who owns a farm one mile from the plaintiff, and who had lived in the vicinity for 20 years, also testified for the plaintiff, but did not know of any spring in this pasture. L. L. Frank, the right of way agent for the defendant company, testified that he had gone over the claim for damages several times with the plaintiff on his farm, but that the plaintiff had never mentioned any spring at any time, and that the first time that he had ever heard there was a spring was when the suit was filed in court.

Joe T. Innes, of Omaha, testified that he was the civil engineer in charge, and had been engaged in laying pipe lines for five years; that three surveys had been made through this land; that upon the field notes all natural obstructions are noted, such as hills, deep draws, and rock, as well as boggy land, sandhills and springs, and that these

field notes of this survey, of which photostatic copies are attached to the bill of exceptions, showed no spring in this pasture.

W. F. Bronsell, the chief inspector, who had charge of the construction work across the Schafer land, never heard of any spring on the place, and testified that the only water present in the pasture was seepage water, which was removed by a four-inch suction diaphragm pump, and that there was no more difficulty in laying pipe across this land than there was in going across any other low land.

It appears from the evidence that only the plaintiff and his brother testified they had ever seen the alleged spring; that possibly two other witnesses had heard that there was a spring in the pasture, but had never seen it. The civil engineer in charge, who testified that it was his custom to make a note of springs, said that there was no spring in the pasture, and the inspector in charge testified that all of the seepage was easily removed by the four-inch pump, which would not have been sufficient to remove a flow of water one inch in diameter from a spring. It is pointed out in the appellant's brief that, after the alleged spring was destroyed, neither the plaintiff nor his brother testified to anything that was done to provide water by pump and gasoline engine, or windmill, or from any other source whatever, to take the place of the water which they said was formerly produced by the spring, and plaintiff admits that in the conversations with the claim agent he had never mentioned the loss of this spring, and appellant insists that the evidence shows there was probably some seepage of water, but no spring in the pasture, for which $1,500 is asked in damages.

In reference to the item asked of $500 for foundering of cows, the evidence discloses it occurred by a pipe line employee driving a truck into a hedge post on the side of a field gate so the wire could not be fastened to the hedge post, and the cattle went through this opening into his field of oats. The plaintiff saw them go as he was plowing in a near-by field, and testified he continued plowing corn to the

end of the row, which was perhaps 30 rods, and then went over and ran them out, and the next morning he noticed that three were sick, and he thinks it was from eating too much oats. He gave them salts and oil. That in three weeks to a month afterwards one of these cows died; that he did not call his veterinarian for this difficulty, and that he secured a certificate of registration of two of these cows in the Holstein-Friesian Association on September 20, 1930, after the pipe line had gone through in July. Dr. W. H. Tuck, of Weeping Water, who was the veterinarian called by the defendant, denied that he had been called to see any foundered cows, but that the two cows that he had been called to see were affected with inflammation of the udder; that later on he was called to see one cow which had a case of chronic foundering, where her toes had grown out long and she walked on her heels, and that this was the cow which was shipped to Omaha and sold for about $25.

Appellant charges in its brief that the only evidence in regard to the damages to the cows is that given by the plaintiff himself; that neither his wife, his brother, nor any other person supported his testimony concerning the foundering of these cows by a truck breaking down a gate-post, which allowed cows to go into the oat field for a very short time before he drove them out.

Except for the damages to the cows, and the testimony of the plaintiff and his brother that there was a spring in the pasture which was cut off, which is positively denied by the engineer in charge of construction across the pasture, and not supported by three witnesses called by the plaintiff, who had known this land for many years, the other items of damage appear to have been only the usual damages which occur when heavy trucks are driven out across tilled land or low pasture land carrying these heavy pipes.

Under all of the evidence submitted in this case, we find that the verdict is beyond any reasonable limit of compensation warranted by the facts. A presumption is raised

that this verdict was not based upon sober judgment of the testimony given by witnesses upon the stand, but was based upon mistake or passion and prejudice. We are compelled to find that the amount of this verdict is not supported by sufficient competent evidence, and is so clearly wrong as to induce the belief that it could not have been reached without partiality. *Trute v. Holden,* 118 Neb. 449; *Garfield v. Hodges. & Baldwin,* 90 Neb. 122; *Burge v. Adams Co.,* 98 Neb. 4; *Wiles v. Department of Public Works,* 120 Neb. 689; *Sternberger v. Sanitary District,* 100 Neb. 449; *Campbell v. Sutliff,* 193 Wis. 370, 53 A. L. R. 771, 779; 2 R. C. L. 199, sec. 170. The judgment is hereby reversed and a new trial ordered. Costs taxed to appellee.

REVERSED.