ANNA PAPKE, APPELLEE, V. THE CITY OF OMAHA, A
MUNICIPAL CORPORATION, APPELLANT.
No. 32711.

EMIL PAPKE ET AL., APPELLEES, V. THE CITY OF OMAHA, A
MUNICIPAL CORPORATION, APPELLANT.
No. 32712.
41 N. W. 2d 751

Filed March 10, 1950.

*Edward F. Fogarty, Edward Sklenicka, James M. Paxson*, and *Herbert M. Fitle*, for appellant.

*William H. Thomas*, for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

These two cases were consolidated for trial in the district court for condemnation proceedings had by the metropolitan city of Omaha in taking and appropriating for public use certain lands of the plaintiffs for municipal airport purposes. Trial was had to a jury resulting in a verdict in favor of the plaintiffs and fixing an award in the amount of $6,500. Judgment was entered on the verdict, and interest added from the date of appropriation of such land by the city. Upon the overruling of defendant's motion for new trial, defendant appealed.

For convenience we will refer to the defendant as the city, and the plaintiffs as originally designated in the district court, or as Anna Papke or Emil Papke as occasion requires.

In 1922, the metropolitan city of Omaha adopted as its home rule charter, Chapter 116, Laws of 1921, in toto, under the provisions of Article XI, section 5, of the Constitution of the State of Nebraska. The original home rule charter and amendments adopted thereto pursuant to constitutional authority appear in Chapter 14, Revised Statutes 1943. In the opinion we will refer to the sections as the same appear in the Revised Statutes 1943. Strictly speaking, such sections of the statutes are not applicable to the city of Omaha as such, but as provisions of its home rule charter. We will have occasion to make reference to the Omaha charter amendment appearing as a note in volume 1, Revised Statutes 1943, p. 490 as such, in addition to the sections of the statutes pertinent thereto.

For the purpose of this appeal these cases have been consolidated and briefed as one case. The issues are the same in both cases, the difference being in the ownership of the land taken by the city in the exercise of its right of eminent domain.

The plaintiffs Anna Papke and her husband Emil Papke live in the northeast part of the city, referred to as the airport area. They have engaged in the truck-garden business for many years. In 1918, they purchased

a 5-acre tract of land which is the home place. In 1934, Anna Papke became the owner of Lots 1 to 24, inclusive, Block 10, Edgewood Park Addition. The plaintiffs jointly own Lots 1 to 12, inclusive, Block 7, Edgewood Park Addition. They also own jointly the north half of Block 16, Edgewood Park Addition, adjacent to Block 10 of such addition, which, together with other leased land, they use in their business of truck gardening. The total acreage owned by the plaintiffs is 12½ acres.

On December 23, 1947, the city approved an award of a board of appraisers appointed under ordinance 15727 of the city of Omaha, providing for appropriation of land for the Omaha Municipal Airport.

The Omaha charter amendment provides, as far as necessary to be considered here, that the city council may acquire by the exercise of the power of eminent domain, private property which is not at the time devoted to a specific public use, for needed public uses; and it further provides, whenever it becomes necessary to appropriate property for the purposes and as in this act provided, the purpose and necessity for such appropriation shall be declared by ordinance. Thereupon the council shall appoint three disinterested freeholders of the city, who, after having been duly sworn to perform the duties required of them by this act with fidelity and impartiality, shall give reasonable notice to the owners of and parties interested in the property to be appropriated, designating the time and place of hearing, and after the giving of such notice and hearing shall appraise and assess damages sustained by the taking of such property to the owners of and the parties interested therein respectively and make awards respectively of such damages. The appraisers shall thereupon report such appraisal and award to the city council for its action thereon. If the award is confirmed it shall be paid as in this act provided, but if rejected, proceedings anew may be commenced.

The pertinent sections of the statutes are sections 14-366 and 14-367, R. S. 1943.

The city, exercising the power of eminent domain, appropriated for municipal airport purposes Lots 1 to 24, inclusive, Block 10, Edgewood Park Addition, the record title of which was in the name of Anna Papke, and Lots 1 to 12, inclusive, Block 7, Edgewood Park Addition, owned by the plaintiffs jointly. The land so appropriated consisted of 36 lots, or approximately 7½ acres. The appraisers, appointed and acting as provided for in the city charter, made an award of $1,920 for the property owned by Anna Papke, and made a further award of $1,080 for the property owned jointly by the plaintiffs.

The evidence given in behalf of the plaintiffs is in substance as follows: Herman Stratbucker, a truck gardener cultivating 60 to 65 acres, testified that 1.1 acres of his land, which is approximately 2 blocks west of the plaintiffs' land, were appropriated by the city under condemnation proceedings, for which the city paid him $1,129.10. This land appropriated by the city was used with other land as a beam strip in connection with the municipal airport. The Papke land was about a block from this beam strip. There are red neon light signals erected on the beam strip for the purpose of guiding pilots at night or during a fog. The planes come in close to the beam standards, then drop down on the runway at the airport.

Ella Lesch, a sister-in-law of Anna Papke, testified that she and her husband owned Sub-Lot 1 of Tax Lot 16, comprising 10⅔ acres; and that the city by condemnation proceedings appropriated 2.12 acres out of the middle of their land for municipal airport purposes, primarily for the building of a beam strip, for which the city paid at the rate of $1,000 an acre. The 2.12 acres so appropriated divided this land so that less than 3 acres were on one side and about 3 acres on the other side of the land taken for the beam strip. This witness lives on Sub-Lot 1 of Tax Lot 16. Her house is one block distant from one part of the beam strip, and two blocks distant from the

other part of it, and this land is immediately south of the Stratbucker land.

The witness Charles Bahm testified that a realty company representing the city purchased 5 acres of land from him which he was using for general farming purposes in 1940, for the amount of $1,000 an acre, which now constitutes a part of the municipal airport. This land is located south and east of the Papke land. He was permitted to remove or wreck the improvements on the land, in addition to the amount paid him.

An expert witness, acquainted with real estate values in the area in which the plaintiffs' land was located, testified that such land was suitable for low-priced housing, factory sites, gardening, and for airport purposes which purpose he placed first in consideration; and that the reasonable market value of the land taken was $200 a lot. The plaintiff Anna Papke testified that the reasonable market value of the land here involved was $250 a lot. Emil Papke, Sr., testified that the reasonable market value of the plaintiffs' property was from $250 to $300 a lot.

Emil Papke, Jr., testified that he had been engaged in managing the plaintiffs' property for truck-gardening purposes since 1931, except during the time he spent with the military forces in the last war. He and his family live on the home place. He testified to the productivity of the land, the quantity and quality of crops raised thereon, that is, the number of bushels, bags, or pecks of the different vegetable products, which constituted a fair average of such crops for 1947 and for the years that he had marketed crops. This evidence was admissible. It went to the question of the productive quality of the soil, and productivity of soil is one of the primary elements to be considered in the determination of truck-garden land values. Anything connected with the land that would influence the market value of the land in the mind of a good faith intending purchaser would be an element in considering value and determin-

ing damage. See Wahlgren v. Loup River Public Power District, 139 Neb. 489, 297 N. W. 833.

This witness further testified as to the prices he received per bushel, per bag, or per peck for truck-garden products, and produced vendor's receipts showing what the crops produced sold for, representing the production from August 1947 for the balance of the gardening year. He also gave his opinion as to the fair estimate of the net profits from the lands for the last ten years, based on the percentage of crop receipts and the expenses necessitated by carrying on the business.

Anna Papke testified that she kept the books, and showed the gross income and the net income realized from the plaintiffs' land for the years 1946, 1947, and 1948.

In Wahlgren v. Loup River Public Power District, *supra,* this court said: "* * * the prices received for crops produced must be considered in an entirely different light. In the case of Wiles v. Department of Public Works, 120 Neb. 689, 234 N. W. 918, this court said: 'The compensation for land taken by right of eminent domain is measured by its market value at the time taken, and no evidence is admissible of its peculiar value for special reasons to its owner.' This statement was quoted with approval in In re Platte Valley Public Power and Irrigation District, 137 Neb. 313, 289 N. W. 383." The opinion, in discussing the evidence, stated that the prices paid for farm products were dependent upon many uncertainties, such as supply and demand, seasonal fluctuations, availability of markets, and wisdom in marketing. The same would be true with reference to the prices paid for truck-garden products sold by the bushel, bag, or peck. To permit a jury to consider the prices of farm products, or truck-garden products, in the determination of damages in eminent domain actions cannot be approved. Such evidence is too speculative to be of any real value and it was erroneously received.

In the instant case we hold that the evidence of prices paid for truck-garden products as heretofore shown, admitted over proper objections, constitutes prejudicial error.

There is evidence of severance of the plaintiffs' land that would interfere with their carrying on the truck-garden business. This issue was not submitted to the jury and need not be discussed.

Nickerson, a witness for the city, testified with reference to the purchase of the Bahm property consisting of 5 acres described as Lots 161, 169, 170, 171, and 172 in Woodland Acres, for which the company he represented paid $5,000. He demonstrated the manner by which the purchase was made, so much for acreage and so much for improvements. After the purchase, this land was deeded by his company to the city for municipal airport purposes.

The witnesses James F. Barrett and Frank Arndt, who appraised the land in question as freeholders appointed in connection with the condemnation proceedings, testified in behalf of the city. The witness Barrett testified to other sales of land in the vicinity and the prices paid therefor as compared to the market value of the plaintiffs' land, as did the witness Arndt. We deem it unnecessary to detail this testimony.

The witness Morton testified with reference to the value of the land used in connection with the beam strip condemned in 1942. He was not a member of the condemnation board. He explained that Mrs. Lesch's land was separated into two pieces; that the bright neon lights from the beam structures would be visible from her house; and that pilots seeking to land their planes and being guided by the beam lights constituted a nuisance to her premises, which was also the case with reference to the Stratbucker land.

The beam-strip structures are estimated by the witnesses to be 10 to 25 feet in height.

The city predicates error on the part of the trial

court in permitting the plaintiffs, over proper objections, to show the amount paid by the city for other land in other condemnation proceedings. This assignment of error relates to the testimony of the plaintiffs' witnesses, Herman Stratbucker and Ella Lesch, whose land was taken under condemnation proceedings for a beam strip in connection with the municipal airport. A summary of this evidence is heretofore set out. These witnesses were permitted to testify to the amount they received for their land by virtue of the awards made in such proceedings, also, the elements of damage to their land are distinct and different from that which would affect the plaintiffs' land by the taking.

In Langdon v. Loup River Public Power District, 142 Neb. 859, 8 N. W. 2d 201, this court held: "In condemnation where the value of real estate is in issue, evidence of particular sales of other land may not be introduced as independent proof on the question of value, unless foundation is laid indicating that prices paid represented the market or going value of such land, that they were made at or about the time of the taking by condemnation and that the land so sold was substantially similar in location and quality to that condemned. * * * Evidence of the price at which other lands have been sold is admissible in evidence in condemnation proceedings on the question of damages where such evidence is predicated upon sufficient foundation to furnish a criterion for market or going value of land condemned." Any decisions of this court holding or tending to hold to the contrary were overruled.

We adhere to the above-stated rule.

It is apparent from the language quoted from Langdon v. Loup River Public Power District, *supra,* that the awards made, as testified to by plaintiffs' witnesses in this case, in other condemnation proceedings and the elements of damage considered with respect thereto, furnish no fair criterion of the reasonable market or

going value of the plaintiffs' lands, and such evidence should not have been admitted.

It is not competent for either party in a condemnation proceeding to put in evidence the amount paid by a condemning party to the owners of adjacent lands which are the subject of condemnation proceedings however similar they may be to that in controversy, whether payment was made in accordance with the award of the appraisers or verdict of a jury, because the price paid under such circumstances is not a fair test of true market value. See, Langdon v. Loup River Public Power District, *supra;* Yonts v. Public Service Co., 179 Ark. 695, 17 S. W. 2d 886; City of Los Angeles v. Cole, 28 Cal. 2d 509, 170 P. 2d 928.

We hold that the trial court committed prejudicial error in admitting the evidence complained of in this assignment of error.

The plaintiffs advance the proposition that under the city charter the city selects its own appraisers and may approve or reject the award filed by them; that acceptance of the award by the city council is an admission and declaration that the award is fair and reasonable, which distinguishes condemnation proceedings under the city charter from proceedings brought under other statutory provisions relating to other governmental agencies or railroads; and therefore, the evidence of awards made to other condemnees for their land and the amount paid is admissible in evidence as it relates to the market value of plaintiffs' land, as applied to the facts in the instant case.

The contention made by the plaintiffs is without merit. Section 14-813, R. S. 1943, a section pertinent to the city charter, provides that condemnees may appeal to the district court in the event there is dissatisfaction with the award of the appraisers, and outlines the procedure to perfect appeal. The trial in the district court involving such an appeal is no different in the procedure had or the

rules governing evidence than in any other condemnation proceedings.

The trial court should refrain from stating the amount of an award in an instruction to the jury. Evidence of amount of award made by appraisers in condemnation proceedings is barred. See Langdon v. Loup River Public Power District, *supra*. This being true, it is erroneous to instruct on this phase of the case.

The approved practice for the purpose of preserving the right of the landowners to interest is for the court, after verdict, to compute and add the interest to the judgment in those cases where the verdict exceeds the award of the appraisers. Langdon v. Loup River Public Power District, *supra*. The trial court followed this practice, so in any event there would be no occasion to inform the jury as to the award made by the appraisers.

The judgment of the district court entered on the verdict is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.