22 N.J. Super. 385 (1952)
92 A.2d 57
FRED J. BROTHERTON, INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
LESTER A. KREIELSHEIMER, TRADING AS DELESON STEEL COMPANY, DEFENDANT-RESPONDENT.
LESTER A. KREIELSHEIMER, TRADING AS DELESON STEEL COMPANY, PLAINTIFF-RESPONDENT,
v.
FRED J. BROTHERTON, INC., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 29, 1952.
Decided October 28, 1952.
*387 Before Judges FREUND, STANTON and CONLON.
Mr. Milton T. Lasher argued the cause for the appellant.
Mr. Dominick F. Pachella argued the cause for the respondent (Messrs. Pachella & Chary, attorneys).
The opinion of the court was delivered by CONLON, J.C.C. (temporarily assigned).
This is an appeal from a judgment for $28,000 in favor of Lester A. Kreielsheimer, trading as Deleson Steel Company (hereinafter referred to as Deleson) against Fred J. Brotherton, Inc. (hereinafter referred to as Brotherton), entered on the verdict of a jury in Superior Court, Bergen County.
The Deleson suit was instituted in the Bergen County Court and the Brotherton suit in the Superior Court. An order of consolidation was entered and the causes tried together. At the pretrial conference it was agreed that the matter be submitted to arbitration and the arbitrators returned a finding for Deleson. This finding was vacated by the Superior Court, Law Division, and on appeal the order vacating the award was affirmed. Brotherton, Inc. v. Kreielsheimer, 8 N.J. 66 (1951). The case thereupon proceeded to trial. Both parties claimed damages against the other for delays incident to the performance of building contracts.
In January 1947 Brotherton received a general contract from the United States Government for the construction of five buildings at the Franklin Delano Roosevelt Hospital at Peekskill, New York. In February 1947 Brotherton also received two general contracts from the Board of Education *388 of Great Neck, Long Island, for the construction of two school additions, one at the Lakeville School and the other at the New Kensington School. Brotherton gave Deleson a sub-contract on each of the three jobs under which Deleson was to furnish and erect all of the structural steel. Time was made the essence of the contracts, and it was provided that Deleson was to be ready to start erection on specified dates and that Brotherton was to have the premises ready for the steel work on those dates. The suits were based upon the alleged breach of these time provisions. Brotherton contended that Deleson had delayed the furnishing and erection of the steel on all five buildings, which delays resulted in consequential damages in substantial amounts. Deleson, on the other hand, claimed damages for delay on the part of Brotherton only on the Peekskill job. It also claimed a balance of $18,747.05 on the contracts, which balance was admitted by Brotherton.
The claims of the respective parties were submitted to the jury as a single issue so far as damages were concerned, and they were instructed to find the net amount due. In that respect, without objection, the court charged the jury as follows:
"In any event, regardless of the claim for damages, you must allow in your verdict for the sum of $18,747.05 which it is agreed is owing by the Brotherton Company to Kreielsheimer. That amount would be your starting point. To it you will add any damages that you find Kreielsheimer is entitled to recover from Brotherton and from it you will take or deduct any damages that you may find he should pay to Brotherton; but that is the basic amount to start with."
The jury rendered a verdict in favor of Deleson in the total sum of "$28,400, $18,747.05 base, $9,652.95 damages," and it is not disputed that the last amount was based upon the damages alleged to have been sustained by Deleson with respect to Building No. 2 of the Peekskill job. The total claim of Deleson in that respect was $11,758. Whether or not an off-set was credited to Brotherton for its damages cannot be determined from the form of the verdict. However, *389 since the question before this court is the validity of the verdict in favor of Deleson for its damages due to Brotherton's delays, it is unnecessary to discuss the many other facets of the case having to do with Brotherton's claim.
The appellant's main ground for reversal concerns the admission into evidence, over its objection of a volume entitled "Steel Construction Manual of the American Institute of Steel Construction." This book was comprised of two main sections entitled: (1) "The American Institute of Steel Construction Specifications"; and (2) "The American Institute of Steel Construction Code of Standard Practice for Steel Buildings and Bridges."
The situation arose in this way. The contracts between the parties for the Peekskill job on which Deleson's claim for damages was based, expressly incorporated the terms of the prime general contract between Brotherton and the Government, including the plans prepared by the Government and the federal specifications. Section 12-1 of the federal specifications, under the title "Technical Provision of Specifications, Structural Steel," contained the following provision:
"Except as otherwise noted, allowable unit stresses, fabrication, assembly, erection and painting shall be in accordance with the American Institute of Steel Construction Specification for the Design, Fabrication and Erection of Structural Steel for Buildings as revised February 1946 except that all connections shall be united (unless otherwise noted) and shapes shall be punched and tapped where required for attachment of other materials. Shop and erection drawings shall be submitted in quadruplicate."
Counsel for Deleson prevailed upon the court by virtue of the above provision to allow into evidence not only the American Institute specifications but as well its Code of Standard Practice. The code was admitted on the basis of the following provision in the preface to the American Institute's specifications:
"In the execution of contracts entered under this specification, the Code of Standard Practice for Steel Buildings and Bridges of the American Institute of Steel Construction shall apply unless otherwise specified or required."
*390 The ruling of the court was error since section 12-1 of the federal specifications expressly limited the adoption of the Institute's specifications to: (a) allowable unit stresses, (b) fabrication, (c) assembly, (d) erection, and (e) painting. No other part of the Institute's specifications are referred to or made a part of the federal specifications. No reference whatsoever was made to that part of the manual which sets forth the code. The admission into evidence of the Institute's specifications may not of itself have been harmful to Brotherton's case since they appear to be highly technical; they call for the application of higher mathematics in many instances, and are virtually unintelligible to the ordinary layman. There was no question raised that the work was not satisfactorily performed. But the matter went further than that. By virtue of the preface  which called for the application of the Institute's code  the jury's attention was drawn to many provisions in the code concerning strikes (a strike, incidentally, was one of the elements in the case), delays, and the remedies and damages that should accrue to the injured party in case of delays. These were matters which went to the very essence of the controversy between the parties, and the provisions contained in the code were never a part in the Deleson-Brotherton contracts. Therefore, the admission of the manual, in view of the instructions concerning it, had the effect of presenting to the jury an agreement materially different from the one existing between the parties. In its charge the court instructed the jury as follows:
"So the first thing we have is the contract between the parties. That is in the order of priority, Number one. If any matter in dispute is governed by the contract which they have signed you don't need to go any further. The contract, however, is to be considered in accordance with the general specifications and if the answer to the particular problem is found in the general specifications you do not need to go any further. If the answer to the particular problem is not found in either then you go first of all to the specifications which precede the code and then to the code. The standard practice for steel buildings and bridges which begins at page 306 was adopted in 1924 and revised November 1, 1945. That was the code in effect *391 at the time these contracts were entered into and it governs the rights of the parties insofar as it applies."
The difficulty with this instruction is that it failed to limit the jury's consideration to the application of the Institute's specifications to the five elements listed above, which involved merely the manner in which the work was performed and which in fact was not in issue. Rather it was a direction to look to the entire manual for terms not part of the contract. The instruction emphasized the error in the admission of the manual.
While the respondent does not argue that the admission of the manual, if error, was not harmful error, it might be noted that it is not for this court to speculate as to the extent to which the jury's determination may have been affected. Palestroni v. Jacobs, 10 N.J. Super. 266 (App. Div. 1950). It is clear that the error injuriously affected the substantial rights of Brotherton within the purport of Rule 1:2-20(b) (4:2-6).
Respondent argues that the appellant, by its conduct in the trial, waived its objection to the admission of the Institute's specification and code as evidence. The record indicates otherwise. Brotherton's attorney made vigorous objection to the evidence in question, and the colloquy between counsel and the court on the subject covers many pages of the record. Once the court had ruled over Brotherton's objection its attorney proceeded to try the case in accordance with the court's ruling. This is not a waiver of objection. It is proper practice.
Brotherton argues several other grounds of appeal, but since they do not go to fundamental questions which will necessarily be pertinent in a new trial, they need not be considered.
As has been indicated, there was no separate verdict in the two cases before us, and since the verdict must be set aside it must be set aside as to both cases.
The judgment below is reversed and both cases remanded for a new trial.