[Civ. No. 18341.   First Dist., Div. Two.   Jan. 21, 1960.]

SANTA CLARA COUNTY FLOOD CONTROL AND WATER CONSERVATION DISTRICT, Appellant, v. FILOMENIA FREITAS et al., Respondents.

Spencer M. Williams, County Counsel, and Robert P. McNamee, Deputy County Counsel, for Appellant.

Di Leonardo, Blake & Kelly and Michael Di Leonardo for Respondents.

DOOLING, Acting P. J.—Plaintiff appeals from a judgment in an eminent domain proceeding awarding defendant landowners $21,000 as the value of their land taken for construction of a drainage canal and $2,500 for severance damages. The parcel condemned was a 60-foot strip amounting to .826 of an acre along the southerly boundary of a larger parcel of land owned by defendants.

The entire parcel including the strip condemned is within the city of Los Altos. While it was agricultural property it had been placed in Zone R-1 by the zoning ordinance of the city of Los Altos, restricted to single family dwellings. Commencing in August, 1956 a firm of civil engineers began the work of preparing a subdivision map of the entire property. As a result a tentative subdivision map of the property was approved by the Planning Commission of Los Altos on November 1, 1956 and a final subdivision map, on which the

266

entire property was divided into 42 lots, was approved by the planning commission on November 29, 1956. This latter map was approved by the Los Altos City Council on December 4, 1956. The approval of this latter map was given on condition that certain of the lots be not built upon for three months to allow plaintiff herein an opportunity to acquire certain of the property for its drainage canal. After this three month period had expired and on March 18, 1957, plaintiff commenced this action. At that date the subdivision map had not been recorded and no work had been commenced to actually improve the property as a subdivision.

Defendants' expert witness, Griffiths, testified that the market value of the parcel taken on March 18, 1957 was $21,750. He arrived at this figure on the basis that the parcel taken amounted to three lots and he put a market value of $7,250 on each lot. Appellant, while admitting that the highest use for which the property was available was the subdivision of it into building lots and that in fixing the market value the highest available future use may be considered insofar as it actually affects the present market value (17 Cal. Jur.2d, Eminent Domain, §§ 74, 75, pp. 646, 647) argues that such rule does not permit a "valuation or damages based on a loss of improved subdivision lots which were not even in existence on the date of valuation." In support of this theory appellant proposed the following instruction, which the court refused to give:

"You are instructed that before relying upon the opinion of Leonard C. Griffiths, you must first ascertain whether that opinion is based, in whole or in part, upon the per lot value of the lots shown to comprise the proposed subdivision of the defendants. If such opinion is based wholly or to such an extent upon such a lot basis that the opinion of the said Leonard C. Griffiths as to the fair market value of the property sought by the plaintiff and the severance damage to the remaining portion cannot be ascertained without reference to such basis, it should then be disregarded."

In support of its argument that it was error to refuse to give this instruction and that the opinion of Griffiths was in fact based on an erroneous and inadmissible theory appellant relies principally upon *City of Los Angeles* v. *Hughes,* 202 Cal. 731 [262 P. 737] and *People* v. *Olsen,* 109 Cal.App. 523 [293 P. 645]. In the Hughes case the court, after reaffirming the rule (202 Cal. p. 733) that the fact that property is

adaptable for subdivision purposes should be taken into consideration in fixing its present market value, said at page 734: "If the argument of counsel . . . is intended . . . to establish that the value of the land must be estimated not only on a basis of a subdivision possibility, but also on the basis of what the owners *would be able to obtain* for the lots after subdivision had actually taken place . . . we are unable to agree . . ." (Emphasis ours.)

In Olsen the court said (109 Cal.App. p. 533): "When the land is so situated that it is reasonably suitable for subdivision purposes into city or town lots which adaptability would enhance its value, that fact should be taken into account in estimating the market value of the tract. But the *mere prospective price* of lots which might be procured by the sale thereof should not be considered when a subdivision of the tract has not actually been made." (Emphasis ours.)

The rule is clear. The actual market value of the lots insofar as that value is presently enhanced by the property's availability for subdivision may be shown, but the *possible future value* if subdivision were made may not be shown.

A reading of Griffiths' testimony makes it clear that he was testifying to the actual market value of the property at the date of the commencement of the condemnation suit and not to a mere prospective future value. On cross-examination this witness testified: ". . . a builder doesn't want to go through all the job of development, the time it takes. From the time you sign up a sales agreement, get your property annexed into the city, go through the Planning Commission, get your zoning, go into the Planning Commission and then to the City Council, the minimum length of time he can do it is five months, and builders will pay an additional price for land where all of this has been done, because they have their crews, they want to get on to the next subdivision. They do this all the time. Sometimes they will do it, less the cost of development of the lots. Others times, they will say to the subdivider, 'You put in the street work and we will buy then that way.' It works both ways, . . . This is brought up to a tract. It can be sold as a tract. Builders will buy it as a tract, even before it goes on recordation with the County."

Griffiths was testifying that in view of the fact that all of the preliminary work to establish a subdivision through the approval of the map by the planning commission and the city

council had been completed the *present* market value was in fact determined by the market price for subdivision lots in that locality. Such testimony was admissible and proper under the established rules and as applied to Griffiths' testimony the proposed instruction above quoted was properly refused.

Appellant also argues that Griffiths' testimony was erroneously based on the price that could have been obtained after the construction of streets, curbs, gutters and drainage. We cannot so read his testimony. In the passage above quoted he clearly made the distinction between the purchase of such a tract "less the cost of development of the lots" and after such development work had been done.

Appellant complains of the following instruction: "In this case there has been a conflict in the testimony of expert witnesses concerning the value of the property taken by the Santa Clara County Flood Control and Water Conservation District.

"You must resolve that conflict. To that end you must weigh one expert's opinion against that of another, the reasons given by one against those of another, and the relative credibility and knowledge of the experts who have testified. Thereupon, you shall find in favor of that expert testimony which, in your opinion, is entitled to the greater weight."

This instruction is BAJI 33-A (1 California Jury Instructions, Civil, 4th ed. pp. 90-91). It is designed for use in those cases where a fact can only be proved by expert testimony and should not be given where "the determination of the issue is not wholly dependent on the exclusive wisdom of the experts." (1 California Jury Instructions, Civil, 4th ed. p. 88.) As applied to expert evidence of value it is subject to criticism since, literally construed it would require the jury to accept *in toto* the testimony of the expert whose testimony in their opinion was entitled to the greater weight. However, the instructions must be read as a whole to determine whether a particular instruction may have misled the jury. (*Westover* v. *City of Los Angeles,* 20 Cal.2d 635, 637 [128 P.2d 350]; *Lindenbaum* v. *Barbour,* 213 Cal. 277, 286 [2 P.2d 161].) The jury was elsewhere instructed that they were not bound to accept the opinion of any witness as to market value, but must determine the fact for themselves; that it was their duty to weigh the experts' testimony by reference to the whole situation of the property and its surroundings, and all surrounding circumstances, and by applying it to their own experience;

and that they were not required to accept passively an expert's opinion, but to give it the weight to which they deemed it entitled, whether great or slight, and to reject it if in their judgment the reasons given for it were unsound. Taking the instructions as a whole we are satisfied that the jury was not misled by the criticized instruction. There were in fact only two experts, one on each side, and the jury did not adopt the figures testified to by either in fixing the value of the property taken or the severance damages.

■ Appellant complains of the refusal to give a proposed instruction that profits which might be derived from a contemplated use of the property should not be considered in fixing the compensation to be awarded. Abstractly the instruction is correct but the failure to give it in this case was not prejudicial. No element of prospective profits to be derived from a contemplated use was considered in the testimony fixing present market value of the parcel taken, as our discussion hereinabove shows. The severance damage allowed was less than $500 more than that fixed by appellant's own expert and over $15,000 less than that fixed by respondents' witness, and cannot have been affected by any consideration of loss of prospective profits from a contemplated use.

■ The introduction into evidence of photographs of a canal similar to the one proposed to be constructed by appellant was not prejudicial error. Appellant's own witness testified that the proposed canal would be similar to the one shown in the photographs.

Other claimed errors of the trial judge are trivial and cannot have prejudiced appellant.

Judgment affirmed.

Draper, J., and Stone, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.